[Cite as *State v. Gall*, 2016-Ohio-2748.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case Nos. 26114 and 26115 |
| | : | |
| v. | : | Trial Court Case Nos. 1978-CR-602 |
| | : | and 1979-CR-84 |
| EUGENE W. GALL | : | |
| | : | (Criminal Appeal from |
| *Defendant-Appellant* | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2016.

. . . . . . . . . . .

H

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

AMY E. FERGUSON, Atty. Reg. No. 0088397, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Eugene W. Gall, appeals from the decision of the Montgomery County Court of Common Pleas declining to award him any days of jail-time credit. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} This matter dates back to the late 1970's when Gall was convicted of multiple felony offenses in several different jurisdictions. In October 1978, Gall was convicted and sentenced to death in Boone County, Kentucky, after he was found guilty of raping and murdering a 12-year-old girl. Shortly thereafter, Gall pled guilty in Grant County, Kentucky, to charges of attempted murder and wanton endangerment. As a result of that conviction, Gall received an aggregate 10-year prison sentence that was ordered to run concurrently with his death sentence.

{¶ 3} While his Kentucky cases were pending, Gall was indicted in Montgomery County, Ohio, for the rape and kidnapping of a 15-year-old girl in Case No. 78-CR-602. Following his Kentucky convictions, Gall was extradited to Ohio to be tried for those offenses. Thereafter, Gall was also indicted in Montgomery County for the kidnapping, rape, and aggravated murder of a 14-year-old girl in Case No. 79-CR-84. On May 18, 1979, Gall pled guilty as charged in both cases and was sentenced to an aggregate prison term of 14-50 years in Case No. 78-CR-602 and life in prison in Case No. 79-CR-84. The sentences were ordered to run consecutively to each other and consecutively to the sentences Gall received in Kentucky. The trial court did not make any finding regarding

jail-time credit at the time of sentencing or in the termination entry.

{¶ 4} After receiving his Montgomery County sentences, Gall was tried and convicted for the rape, attempted rape, and aggravated robbery of three children in Greene County, Ohio. Following that conviction, the trial court imposed an aggregate prison term of 19-65 years that was ordered to run consecutively to the sentences he received in Montgomery County and Kentucky. Gall was then sent back to Kentucky to begin serving his sentences there.

{¶ 5} Approximately 20 years later, on October 30, 2000, the United States Sixth Circuit Court of Appeals granted a writ of habeas corpus filed by Gall. In doing so, the Sixth Circuit determined that pervasive errors at trial led to an unconstitutional conviction in the Boone County case for which Gall was sentenced to death. *Gall v. Parker*, 231 F.3d 265 (6th Cir.2000). The Sixth Circuit further determined that double jeopardy prevented Kentucky from retrying him on the Boone County charges. *Id.* Thereafter, Gall's Boone County conviction was nullified and directed to be expunged from his record. *Gall v. Scroggy*, E.D. Ky. No. 2:87-56-DCR, 2008 WL 9463883 (Dec. 4, 2008).

{¶ 6} On November 13, 2001, Gall was extradited to Ohio to begin serving his Montgomery County sentences. According to the State, on September 27, 2013, the Ohio Bureau of Sentence Computation (OBSC) notified the State that it had calculated Gall's jail-time credit and credited him with 5,807 days as a result of the time he served in Kentucky on the invalidated Boone County conviction. Specifically, the State alleges that the OBSC gave Gall jail-time credit from December 1985, the date Gall completed his 10-year sentence for the Grant County offenses, through November 13, 2001. Although the OBSC's notice of jail-time credit is not part of the record, Gall does not

dispute that OBSC awarded him with jail-time credit as alleged by the State.

{¶ 7} In response to the OBSC's notice, on November 27, 2013, the State filed a motion in Montgomery County Case Nos. 78-CR-602 and 79-CR-84 for an order requesting the trial court to properly calculate the amount of jail-time credit Gall should be awarded, if any.   In the motion, the State argued that it is the responsibility of the trial court, not the OBSC, to calculate jail-time credit.   The State also argued that the OBSC's calculation was incorrect because R.C. 2967.191 does not permit jail-time credit to be awarded for time served on unrelated offenses.   After taking the matter under advisement, the trial court issued a jail-time credit report indicating that Gall was not entitled to any jail-time credit.   In so holding, the trial court found that Gall "was never initially incarcerated for the [offenses in Case Nos. 78-CR-602 and 79-CR-84], and the sentences [in those cases] were ran consecutive to his Kentucky sentence."   Jail Time Credit Report (Dec. 9, 2013), Montgomery County Case Nos. 78-CR-602 and 79-CR-84, Docket No. 25.

{¶ 8} Gall now appeals from the trial court's decision awarding him no days of jail-time credit, raising three assignments of error for review.


**First Assignment of Error**

{¶ 9} Gall's First Assignment of Error is as follows:

A RECALCULATION OF JAIL TIME CREDIT SHOULD HAVE NEVER OCCURRED.

{¶ 10} Under his First Assignment of Error, Gall contends the OBSC correctly calculated his jail-time credit at 5,807 days and that the trial court erred in recalculating

his jail-time credit to zero days. According to Gall, he should have been credited with the 5,807 days he served in Kentucky as a result of his conviction and sentence in Kentucky being invalidated. We disagree.

{¶ 11} "R.C. 2967.191, governing jail time credit, implements the equal protection right to credit for prior incarceration." *State v. Ogletree*, 2d Dist. Clark No. 2015-CA-2, 2015-Ohio-4715, ¶ 12, citing *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440. (Other citations omitted.) The statute provides, in part:

The department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined *for any reason arising out of the offense for which the prisoner was convicted and sentenced*, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term * * *.

(Emphasis added.)

{¶ 12} "The Ohio Administrative Code provides additional details regarding when a prisoner is entitled to jail-time credit and how to calculate a prison term, taking the credit into account." *Fugate* at ¶ 9. Section (A) of OAC 5120-2-04 provides language similar to that of R.C. 2967.191, stating:

The department of rehabilitation and correction shall reduce the minimum and maximum sentence, where applicable, the definite sentence or the stated prison term of an offender by the total number of days that the

offender was confined *for any reason arising out of the offense for which he was convicted and sentenced*, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or sanity, confinement in a community-based correctional facility and program or district community-based correctional facility and program, where applicable, and confinement while awaiting transportation to the place where he is to serve his sentence.

(Emphasis added.)

{¶ 13} Section (I) of OAC 5120-2-04 also provides that:

If an offender receives a sentence, or stated prison term to this department consecutive to or concurrent with a sentence in an institution in another state or a federal institution, no action will be taken towards considering him for parole or otherwise terminating his sentence, or stated prison term until the offender is either electronically or physically committed to the custody of this department. At that time, the offender's minimum and maximum, definite sentence or stated prison term shall be reduced pursuant to this rule *by the total number of days confined for the crime as certified by the court and the sheriff*.

(Emphasis added.)

{¶ 14} "Although the [department of rehabilitation and correction] has a mandatory duty pursuant to R.C. 2967.191 to credit an inmate with jail time already served, it is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his sentence." *State ex rel. Rankin*

*v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7. Therefore, the OBSC may credit only the amount of jail time that the trial court determines the inmate is entitled to by law. *Id.* at ¶ 8. It cannot apply jail-time credit that has not been calculated by the sentencing court. *Williams v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-77, 2009-Ohio-3958, ¶ 16.

{¶ 15} "As this court has previously stated, by its very terms R.C. 2967.191 only applies to time spent in confinement arising out of the offense for which the prisoner was subsequently convicted and sentenced. A defendant is not entitled to credit for time served in another state on an unrelated offense." (Citation omitted.) *State v. Delarosa*, 2d Dist. Miami No. 2007CA34, 2008-Ohio-4133, ¶ 11. We have also held that "where incarceration also arose out of a set of facts separate and apart from the conviction or convictions on which sentence is imposed, the statutory credit [under R.C. 2967.191] is inapplicable." (Citation omitted.) *State v. Nagey*, 2d Dist. Greene No. 2003CA21, 2003-Ohio-6903, ¶ 4. Furthermore, "[t]he language of R.C. 2967.191 does not allow the convicted person to turn his confinement for various convictions into a 'bank' of jail time that he [can] 'withdraw' as needed for pending felony offenses." *State v. Marini*, 5th Dist. Tuscarawas No. 09-CA-6, 2009-Ohio-4633, ¶ 22; *State v. Barnett*, 7th Dist. Mahoning No. 13 MA 123, 2014-Ohio-3686, ¶ 13.

{¶ 16} In support of his claim that he should receive jail-time credit as calculated by the OBSC, Gall cites two cases that were decided when the original version of R.C. 2967.191 was in effect. R.C. 2967.191 first took effect on October 20, 1965. *State v. Packer*, 16 Ohio App.2d 171, 178, 243 N.E.2d 115 (3d Dist.1969), citing 131 Ohio Laws 688. That version of the statute provided the following:

The Adult Parole Authority upon proper certification by the trial judge of time served, in the journal entry of sentence and upon recommendation of the trial judge may reduce the minimum sentence of a prisoner by the number of days the prisoner was confined at the county jail or workhouse or confined at a state facility for a presentence examination * * * after a verdict or plea of guilty and before commitment.

*Workman v. Cardwell*, 338 F.Supp. 893, 901 (N.D.Ohio 1972).

{¶ 17} Noticeably absent from this version of the statute is the "arising out of the offense" language that is included in the current version. However, effective March 23, 1973, R.C. 2967.191 was amended to require that "the Adult Parole Authority shall reduce the minimum and maximum sentence of a prisoner by the total number of days the prisoner was confined *for any reason arising out of the offense for which he was convicted and sentenced.*" (Emphasis added.) *State v. Solis*, 34 Ohio St.2d 13, 295 N.E.2d 407 (1973), fn. 1; *State v. Rawlins*, 36 Ohio St.2d 137, 138, 304 N.E.2d 898 (1973).

{¶ 18} The first case cited by Gall, *McNary v. Green*, 12 Ohio St.2d 10, 230 N.E.2d 649 (1967), held that "time served under a conviction which is subsequently vacated and not reimposed should be credited to a prior existing sentence which was not running during the period the accused was in custody under the vacated sentence." *Id.* at 12. In *McNary*, the defendant was convicted for grand larceny in 1957, sentenced to prison, and then released on parole in 1959. *Id.* at 10-11. Two years later, in 1961, the defendant was convicted for a second grand larceny offense, declared a parole violator, and sent back to prison. *Id.* at 11. Thereafter, the defendant was released on parole two more times and violated his parole each time.

{¶ 19} Following his parole violations, the defendant in *McNary* was returned to prison to serve his 1961 prison term. However, in 1967, the trial court vacated his 1961 conviction on constitutional grounds. The Supreme Court of Ohio held that it was appropriate to credit defendant for the time he served on the invalid 1961 sentence explaining that:

> During the time defendant was in custody under his invalid conviction, he could have been at large on parole for his 1957 conviction with his sentence running thereon, or if he had violated his parole, he could have been in custody serving his time on the 1957 conviction. In either event, his 1957 sentence would have been running and by now would have expired.

*Id*. at 12.

{¶ 20} In following *McNary*, the Supreme Court stated in *State ex rel. Moon v. Ohio Adult Parole Auth.*, 22 Ohio St.2d 29, 257 N.E.2d 740 (1970) that there is a "general disinclination of this state to permit a criminal to be incarcerated for a period of time for which he receives no credit." *Id*. at 31. The court in *Moon* also cited the original version of R.C. 2967.191 and stated that:

> In R.C. 2967.191, the General Assembly has permitted the Adult Parole Authority to reduce any sentence by the number of days the criminal was incarcerated in a county jail or state processing facility subsequent to a guilty verdict or guilty plea, but prior to the commencement of the sentence. In [*McNary*] this court held that time served under a sentence subsequently vacated must be credited to a prior existing sentence.

*Id*.

{¶ 21} The second case cited by Gall, *State v. Preston*, 20 Ohio App.2d 333, 253 N.E.2d 827 (7th Dist.1969), also followed the Supreme Court of Ohio's decision in *McNary*. In *Preston*, the defendant was convicted of armed robbery in 1952 and was sentenced to 25 years in prison. *Id.* at 333. On the same day and in a separate case, the defendant was also convicted of being a habitual criminal and was sentenced to life in prison. *Id.* In accordance with statute, the armed robbery offense was vacated and set aside. However, in 1968, the trial court vacated the habitual criminal conviction and reimposed the sentence for armed robbery. In doing so, the trial court did not grant the defendant any jail-time credit for the time he spent in prison from 1952 to 1968 on the invalid charge of being a habitual criminal. *Id.* at 334.

{¶ 22} In following *McNary*, the Seventh District Court of Appeals held that the defendant in *Preston* should be given credit for the time he served on the invalid charge and said credit should go toward the armed robbery sentence. *Id.* at 335. Specifically, the court stated that: "when a person has served time in a penal institution on an invalid charge as a habitual criminal, time served in the penal institution on such invalid charge should be credited to the pending valid charge whose sentence was vacated and set aside pursuant [to statute]." *Id.*

{¶ 23} *McNary* and *Preston* are distinguishable from the present case in that the defendants in those cases requested jail-time credit for time served on unrelated sentences that were imposed by Ohio courts, not courts of another state. In addition, these cases were decided under the original version of R.C. 2967.191, which did not provide that jail-time credit applies to confinement "arising out of the offense for which the prisoner was convicted and sentenced." Thus, the holdings in *McNary* and *Preston*, and

the statements in *Moon* do not align with the current version of R.C. 2967.191 and are otherwise inapplicable here.

{¶ 24} After R.C. 2967.191 was amended to include the "arising out of the offense" language, there have been no holdings in Ohio similar to that in *McNary* and *Preston*. Two years after R.C. 2967.191 was amended, the First District Court of Appeals noted in *State v. Dawn*, 45 Ohio App.2d 43, 340 N.E.2d 421 (1st Dist.1975) that "[t]here appears to be no precedent, established by case law, for allowing a defendant credit for time served on a prior conviction in another jurisdiction towards a later, totally unrelated conviction, even where such prior conviction was reversed, and the defendant discharged.  Nor do we find any statutory authority for such allowance."  *Id*. at 44.

{¶ 25} In *Dawn*, the defendant was convicted of burglary in Clermont County, Ohio, and was imprisoned for the offense in 1971 and 1972.  *Id*. at 43.  In November 1972, the burglary conviction was reversed on appeal and the defendant was released from prison.  *Id*.  Two years later, in 1974, the defendant was convicted of stealing two paintings in Hamilton County, Ohio, and was sentenced to serve up to five years in prison. *Id*.  At sentencing, the defendant argued that he should be able to receive credit on his sentence in Hamilton County for his time served on the invalidated burglary charge.  *Id*.

{¶ 26} The trial court denied the defendant any such credit and the First District Court of Appeals affirmed the decision, holding that R.C. 2967.191 did not apply to allow any such credit since the statute provides that a defendant is entitled to credit for confinement "related to the offense for which he was tried and convicted."  *Id*. at 44. Specifically, the court stated that R.C. 2967.191 was inapplicable because "the time sought to be utilized arose out of a set of facts separate and apart from the instant

conviction and arose in another jurisdiction[.]" *Id.*; *Accord State v. Zuder*, 2d Dist. Champaign No. 96-CA-11, 1997 WL 47403, *3 (Feb. 7, 1997).

{¶ 27} Similarly, in *State v. Jones*, 6th Dist. Wood No. WD-98-013, 1998 WL 352296 (June 26, 1998), a defendant committed multiple crimes in Wood County, Ohio, in 1985 and was sentenced to serve an indefinite prison term of up to five years. *Id.* at *1. The defendant was released after five years and was thereafter convicted of another offense in Lucas County, Ohio, for which he began serving a prison term. *Id.* At some point in time, the trial court in Wood County determined that the defendant's 1985 sentence was impermissible by statute, and amended it to be a definite term of two years. *Id.* Since the defendant had already served five years, he requested the trial court in Wood County to credit the extra time he served in prison toward the sentence he was currently serving in Lucas County. *Id.* The trial court, however, refused to credit the extra time served and the defendant appealed. In relying on R.C. 2967.191, the Sixth District Court of Appeals affirmed the trial court's decision, holding that "it is well settled that a prisoner is not entitled to credit for time served in another jurisdiction for another offense." *Id.* at 1-2.

{¶ 28} Also, in *State v. Stewart*, 8th Dist. Cuyahoga No. 92790, 2009-Ohio-5700, a defendant convicted of possession of heroin requested jail-time credit for time served on a prior, unrelated 11-month prison sentence that was modified and eliminated on appeal due to delayed execution of the sentence. The trial court denied the defendant any credit for time served on the prior sentence even though it was eliminated. *Id.* at ¶ 4. The Eighth District Court of Appeals affirmed the trial court's decision based on R.C. 2967.191, holding that the statute "does not entitle a defendant to jail-time credit for any

period of incarceration which arose from facts which are separate and apart from those on which his current sentence is based." *Id.* at ¶ 9-10.

{¶ 29} While the facts of *Dawn*, *Jones*, and *Stewart* are not identical to the facts of the instant case, they nevertheless support the notion that the invalidation of Gall's prior, unrelated sentence in Kentucky does not render the time served for that invalid sentence creditable under R.C. 2967.191. The statute clearly states that a prison term can only be reduced "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced[.]" In this case, Gall's invalidated Kentucky conviction was related to an entire separate set of facts and separate set of offenses that did not "arise out of" the rape, kidnapping and attempted murder offenses that he committed in Ohio.

{¶ 30} It is also important to note that "[t]ime served pursuant to an unrelated prior conviction does not arise out of a subsequent conviction even though a detainer is in effect during the period of incarceration." *State ex rel. Larkins v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 89AP-1348, 1991 WL 16140, * 1 (Feb. 8, 1991). In other words, the fact that Ohio had a detainer in effect while Gall was serving his sentence in Kentucky, does not mean that the Kentucky sentence arose from the Ohio offenses for purposes of R.C. 2967.191.

{¶ 31} A distinguishable scenario with respect to detainers is demonstrated in *State v. Walker*, 2d Dist. Montgomery No. 16599, 1998 WL 214604 (May 1, 1998). In *Walker*, the defendant was already serving a prison sentence in Montana when he was sentenced for crimes committed in Ohio. *Id.* at *1. The Ohio trial court ordered the defendant's sentence to be served consecutive to Montana's sentence, issued a detainer,

and returned him to Montana to continue serving his sentence there. The defendant was eventually paroled by Montana prison officials subject to the Ohio detainer; however, the defendant refused to waive extradition to Ohio. *Id.* The defendant then filed habeas corpus actions in Montana's state and federal courts challenging the Ohio detainer, all of which were denied. *Id.*

{¶ 32} Thereafter, the defendant in Walker was returned to Ohio where he filed a request for jail-time credit for the three-year period of time in which he spent in Montana awaiting to be returned to Ohio during the habeas proceedings. *Id.* The trial court denied his request, and we reversed that decision on the basis that the defendant's continued confinement in Montana was not the result of the Montana convictions, but due to the detainer that was in place while he was challenging the detainer, which arose from his Ohio convictions. *Id.* at *2.

{¶ 33} The present case is distinguishable from *Walker* because Gall was not released on parole in Kentucky nor was he being held in confinement solely due to Ohio's detainer. Rather, during the 5,807 days at issue, Gall was in prison serving his Kentucky conviction that was unrelated to his Ohio offenses. The fact that he challenged the Kentucky conviction and ultimately succeeded in having it vacated does not mean that his time served in Kentucky arose from the Ohio offenses simply because there was an Ohio detainer in place. Rather, the 5,807 days he was confined in Kentucky arose solely from his invalidated Kentucky conviction. Therefore, pursuant to R.C. 2967.191, the time served on that unrelated, invalidated conviction, cannot be applied as jail-time credit in Ohio.

{¶ 34} In reaching this decision, we note that there is a body of federal case law

that credits time served on prior, invalid sentences toward unrelated sentences that run consecutively to the invalid sentence. *See Miller v. Cox,* 443 F.2d 1019, 1020-1021 (4th Cir.1971)*; Barrow v. State*, 251 F.Supp. 612 (E.D.N.C.1965); *Meadows v. Blackwell*, 433 F.2d 1298 (5th Cir.1970); *Sancinella v. Henderson*, 380 F.Supp. 1393 (N.D.Ga.1974); *United States ex rel. McKee v. Maroney*, 264 F.Supp. 684 (M.D.Pa.1967); *Johnson v. Henderson*, 455 F.2d 983 (5th Cir.1972); *Goodwin v. Page*, 418 F.2d 867 (10th Cir.1969).

{¶ 35} However, the foregoing case law is distinguishable in that it involves convictions imposed by courts of the same sovereign. In addition, "the decisions of federal courts constitute persuasive authority only and are not binding on this court." *State v. Prom*, 12th Dist. Butler No. CA2004-07-174, 2005-Ohio-2272, ¶ 22, citing *State v. Burnett*, 93 Ohio St.3d 419, 422-424, 755 N.E.2d 857 (2001). " 'There is no rule requiring the Supreme Court of Ohio, in its interpretation of the statutory law of Ohio, to follow the decisions of the Supreme Court of the United States under any and all circumstances[.]' " *State v. Huffman*, 131 Ohio St. 27, 39-40, 1 N.E.2d 313 (1936), quoting *McNary v. State*, 128 Ohio St. 497, 191 N.E. 733 (1934), paragraph three of the syllabus. *Accord Sacksteder v. Senney,* 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 38 ("we are not bound by decisions of the United States Supreme Court that do not involve federal statutory and constitutional law"); *Reygaert v. Palmer*, 2d Dist. Montgomery No. 9296, 1986 WL 1340, *4 (Jan. 29, 1986) ("this court is not bound by either federal or foreign state case law").

{¶ 36} Accordingly, pursuant to the terms of R.C. 2967.191, we hold the trial court did not err in failing to credit Gall with the prison time he served in Kentucky toward his Ohio convictions, as his confinement in Kentucky, whether or not invalidated, did not arise

from his Ohio convictions.

{¶ 37} Gall's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 38} Gall's Second Assignment of Error is as follows:

THE REMOVAL OF 5,807 DAYS OF JAIL TIME CREDIT VIOLATED DOUBLE JEOPARDY, AND MR. GALL'S RIGHT TO DUE PROCESS UNDER THE 6TH AND 14TH AMENDMENTS.

{¶ 39} Under his Second Assignment of Error, Gall contends he was denied due process of law because he did not receive the State's jail-time credit motion, which resulted in him being deprived of notice of the motion, an opportunity to submit a response to the motion, the ability to confer with legal counsel regarding the motion, and a hearing on the matter. In addition, Gall contends his right to be protected from double jeopardy was violated given that his Kentucky sentence was invalidated. We find no merit in either of Gall's claims.

{¶ 40} "Due process of law, as guaranteed both by Section 1 of the Fourteenth Amendment to the United States Constitution and by Article I, Section 16 of the Ohio Constitution, encompasses, at a minimum, notice and an opportunity to be heard." *State v. Crews*, 179 Ohio App.3d 521, 2008-Ohio-6230, 902 N.E.2d 566, ¶ 9 (2d Dist.), citing *State v. Edwards*, 157 Ohio St. 175, 178, 105 N.E.2d 259 (1952). " 'A criminal defendant's right to counsel arises out of the [S]ixth [A]mendment, and includes the right to appointed counsel when necessary.' " *State ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110, 515 N.E.2d 928 (1987), quoting *Potashnick v. Port City Constr. Co.,* 609 F.2d

1101 (5th Cir.1980), *certiorari denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

{¶ 41} We have held that due process of law entitles a defendant to a hearing on his objection that he or she is entitled to additional jail-time credit. *State v. Ayers*, 2d Dist. Montgomery No. 25489, 2013-Ohio-4234, ¶ 8, citing *State v. Nunez*, 2d Dist. Montgomery No. 21495, 2007-Ohio-1054, ¶ 20. However, "a trial court is not required to conduct an evidentiary hearing on the trial court's factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his sentence *absent a sufficient objection by a defendant to the court's jail time credit order.*" (Emphasis added*) Nagy*, 2d Dist. Greene No. 2003CA21, 2003-Ohio-6903 at ¶ 21. Furthermore, where a trial court possesses the necessary facts to calculate jail- time credit, a hearing is not required. *Ayers* at ¶ 12. A hearing is only required "where the court does not have the necessary information to calculate jail credit." *Id.*

{¶ 42} As mentioned under the First Assignment of Error, "jail time credit is not appropriate [under R.C. 2967.191] where the defendant was serving time for a separate offense." *Id.* at ¶ 13, citing *State v. Dewey*, 2d Dist. Montgomery No. 25515, 2013-Ohio-2118, ¶ 13. In *Ayers*, we found that since the court docket showed that the defendant was serving a three-year sentence for a separate case during the time the case at issue was pending, all the facts necessary to determine jail-time credit were a matter of record and he was not entitled to jail-time credit under R.C. 2967.191. *Id.* at ¶ 13. *Compare Nunez* at ¶ 32 (holding that upon defendant filing a motion for jail-time credit and arguing that he was detained in Mexico only for the crimes charged in Ohio, the trial court erred in not conducting a hearing to determine the circumstances of Nunez's incarceration in Mexico and whether jail-time credit for the time awaiting extradition was required).

{¶ 43} In this case, on November 27, 2013, the State filed a motion requesting the trial court to calculate Gall's jail-time credit, if any, as it was not calculated by the trial court when Gall was sentenced in 1979. Approximately two weeks later, the trial court issued its jail-time credit report awarding Gall with zero days of credit. Four days later, Gall filed a pro se motion for extension of time to respond to the State's motion on grounds that he did not receive notice of the State's motion until December 4, 2013, due to the State allegedly mailing the motion to the incorrect penal institution.

{¶ 44} Following these submissions, Gall then filed pro se objections to the State's motion on January 7, 2014. Gall's objections amounted to various legal arguments, including that the court did not have jurisdiction to calculate jail-time credit, the State lacked standing to file its motion requesting a jail-time credit calculation, that res judicata barred the State from filing the motion, and that he was entitled to 5,807 days of jail-time credit because the Kentucky death sentence was invalidated. However, Gall did not argue that under R.C. 2967.191, the time he served in Kentucky arose out of the offenses for which he was convicted and sentenced in Ohio. In fact, Gall's pleading provided a factual history, which informed the trial court of his prior, unrelated convictions and sentences from Kentucky.

{¶ 45} After Gall filed his objections and other various motions, the trial court held a hearing on January 28, 2014, during which Gall was represented by appointed counsel. At the inception of the hearing, the court briefly advised the parties that the defendant's jail-time credit objections had been denied. Gall's counsel advised that he was not aware that the State had filed a jail-time credit motion since he was not appointed as counsel at that time. Gall's counsel then advised the court that he was going to review

the matter and then perhaps request the court to reconsider the decision. The court thereafter indicated that it would accept a motion for reconsideration on the issue. Following the hearing, neither Gall nor his defense counsel filed a motion for reconsideration.

{¶ 46} Having reviewed the record, we find that even if Gall did not initially receive notice of the State's jail-time credit motion, he eventually received the motion on December 4, 2013, and responded to it through his pro se objections that were denied by the trial court. The record also indicates that Gall had the opportunity to discuss the State's motion and his objections with his appointed counsel, and that his counsel indicated that he would review the matter. The trial court also gave Gall's counsel an opportunity to file a motion for reconsideration on the jail-time credit issue, but no such motion was ever filed. Based on these facts, we fail to see how Gall was deprived of notice, an opportunity to be heard, or his right to counsel.

{¶ 47} We also find no error in the trial court's failure to hold a hearing on Gall's objections, as there was sufficient information in the record for the trial court to calculate jail-time credit without a hearing. Like *Ayers*, the record indicates that the prison time Gall served in Kentucky was for an unrelated case, which cannot be credited towards his Ohio sentences under the terms of R.C. 2967.191. In raising his objections, Gall himself advised the trial court of his unrelated Kentucky convictions and he never argued that those offenses arose out his Ohio convictions. Accordingly, all the information the trial court needed to deny his objections was a matter of record. Therefore, a hearing was not required.

{¶ 48} Gall's claim asserting a double jeopardy violation also lacks merit. "The

Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and of Section 10, Article I of the Ohio Constitution protect an accused from multiple prosecutions and from multiple punishments for the same offense." *State v. Adams*, 105 Ohio App.3d 492, 497, 664 N.E.2d 588 (2d Dist.1995), citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Thomas*, 61 Ohio St.2d 254, 400 N.E.2d 897 (1980). Here, Gall was serving consecutive sentences on several unrelated convictions, one of which was vacated after it was partially served. "In this instance there is no question of multiple punishment for the same offense." *Miller*, 443 F.2d at 1020.

{¶ 49} Gall's Second Assignment of Error is overruled.


**Third Assignment of Error**

{¶ 50} Gall's Third Assignment of Error is as follows:

THE STATE WAS BARRED BY RES JUDICATA FROM FILING TO RECALCULATE JAIL TIME CREDIT AND THUS HAD NO STANDING.

{¶ 51} Under his Third Assignment of Error, Gall contends that res judicata bars the trial court from recalculating his jail-time credit because all issues regarding sentencing were addressed in the termination entries from 1979, and the State failed to raise the issue of jail-time credit when his Montgomery County convictions were first appealed. In other words, Gall believes the State was improperly permitted to relitigate the issue of jail-time credit by filing its jail-time credit motion. We disagree.

{¶ 52} " 'Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any

proceeding, except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction or on an appeal from that judgment. ' " *State v. Flemings*, 2d Dist. Montgomery No. 24615, 2011-Ohio-4286, ¶ 28, quoting *State v. Roberts*, 10th Dist. Franklin No. 10AP-729, 2011-Ohio-1760, ¶ 6. (Other citations omitted.)

{¶ 53} In *State v. Coyle*, 2d Dist. Montgomery No. 23450, 2010-Ohio-2130, we concluded that res judicata does not apply when the trial court did not specify the number of days of jail-time credit in its termination entry. *Id.* at ¶ 10. We stated that:

> The number of days Defendant had spent in confinement for purpose of any reduction of his sentence to which Defendant would be entitled pursuant to R.C. 2967.191 was not a point or fact in issue in the prior criminal action between these same parties that was terminated by the November 30, 1998 judgment of conviction and sentence. Rather, it was a matter collateral to the judgment of conviction and sentence the court journalized. Furthermore, the court therein did not pass upon whether Defendant had spent any time at all in confinement. The court instead omitted any finding regarding that point or fact when it left blank the open space in its preprinted "Termination Entry." Had the court entered "0" or "none" before the word "days," then Defendant's current claim would be barred by res judicata, but the court made no such finding. Defendant's claim for jail-time credit, or the number of days he spent in confinement for purposes of R.C. 2967.191, in the motion he filed on March 16, 2009, is therefore not barred by res judicata.

*Id.*

**{¶ 54}** The present case is analogous to *Coyle* in that the trial court did not make any finding with respect to jail-time credit at sentencing and left a blank space on the termination entries where the court was supposed to indicate the amount of jail-time credit to be applied. Accordingly, we find no merit to Gall's claim that res judicata prevented the State from requesting the trial court to calculate his jail-time credit.

**{¶ 55}** Gall's Third Assignment of Error is overruled.


## Conclusion

**{¶ 56}** Having overruled all three of Gall's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

**{¶ 57}** As noted in the main opinion, several federal courts have held that when there are multiple consecutive sentences imposed at separate times, upon the invalidation of the earlier sentence, the second, valid consecutive sentence is deemed to run from the date it was imposed. *See, e.g., United States ex rel. McKee v. Maroney*, 264 F.Supp. 684, 688 (M.D.Pa.1967) (if a person is serving a void sentence, and is sentenced on another charge to run consecutive to the void sentence, he should be credited for the time served under the void sentence from the date of the imposition of the valid sentence); *Johnson v. Henderson*, 455 F.2d 983 (5th Cir.1972) (where defendant served one third of 10-year sentence, was paroled, then was convicted of burglary for

which he received a 5-year sentence to run consecutively with balance of 10-year sentence, upon voidance of 10-year conviction and sentence defendant was entitled to credit on his 5-year sentence from the date his second sentence was imposed); *see also Barrow v. State*, 251 F.Supp. 612, 613-614 (E.D.N.C.1965); *United States ex rel. Olden v. Rundle*, 279 F.Supp. 153, 154 (E.D.Pa.1968); *Goodwin v. Page*, 418 F.2d 867, 868 (10th Cir.1969).

{¶ 58} In *Sancinella v. Henderson*, 380 F.Supp. 1393 (N.D.Ga.1974), *affirmed*, 502 F.2d 784 (5th Cir.1974), the Appellant argued that he should receive credit for time served on a conviction that had been vacated on appeal. The Appellant was sentenced for conspiracy in January of 1964 to twelve years in prison; that conviction was reversed on appeal in August 1964. He was later (December 1964) indicted for a different conspiracy and in August of 1967 was sentenced to thirteen years in prison. The court examined the indictments and found it was "clear that the [second] conspiracy * * * did not overlap with the [first, overturned] conspiracy * * * and, hence, relates to a different violation of the United States Code." *Id*. at 1394. The trial court reviewed 18 U.S.C. § 3568, which provided, in part, that "[t]he Attorney General shall give any such person credit toward service of his sentence for any days spent in custody *in connection with the offense or acts, for which sentence was imposed*" (emphasis added) and held that the time spent on the vacated sentence was not spent "in connection with the first offense" and denied credit. *Id.* at 1395.

{¶ 59} Regardless of the "in connection with" language of 18 U.S.C. § 3568, the *Sancinella* court went on to note that "even if the offenses are technically unrelated, credit is allowed on a subsequent sentence for time served on invalid sentence *when service of*

*that previous term delayed commencement of the subsequent sentence.*" (Emphasis added.) *Id.*, citing (among others) *Johnson, supra,* and *Meadows v. Blackwell*, 433 F.2d 1298, 1299 (5th Cir.1970). The same could be said for reliance on the "arising out of" language of R.C. 2967.191. However, since Sancinella had not been sentenced on the second offense (some of the elements of which had not yet happened) at the time he was serving the first, void sentence, the previous sentence did not delay the commencement of the second.

{¶ 60} In *Meadows*, while the defendant was on parole, he was arrested for a Dyer Act (interstate transportation of a stolen motor vehicle) offense; a parole violation warrant was issued, but not executed. He was convicted and sentenced on the Dyer Act charge, but that conviction was reversed and the charge was dismissed. On the same day as the reversal, the parole violation warrant was executed and the defendant began serving the time remaining on his first sentence. In a habeas petition, the defendant sought credit for the time spent in custody on the invalidated Dyer Act conviction.

{¶ 61} The Fifth Circuit addressed the "delayed commencement" principle and held that "[h]ad it not been for the intervention of the Dyer Act sentence, the commencement of service of the remainder of his earlier sentence would have been advanced." *Id.* Accordingly, the court held that the appellant's preexisting, valid sentence should be credited with the time served on the invalid conviction. *Id.*

{¶ 62} The Supreme Court of Ohio's decision in *McNary*, *supra*, appears to follow the "delayed commencement" principle. The *McNary* court explained that during the time the defendant was in custody for his invalid conviction, his sentence for his valid conviction could have been running. *Id.* at 12. In other words, the prison time served

on the invalid conviction and sentence in *McNary* delayed the defendant's ability to serve his other valid sentence. Therefore, like *Meadows*, the Supreme Court of Ohio held the defendant should be credited for the time served on his invalid sentence. *Id.* Again, this was prior to the amendment of R.C. 2967.191.

{¶ 63} The Fourth Circuit described three scenarios where credit for time served under a vacated sentence could arise. *Miller v. Cox*, 443 F.2d 1019 (4th Cir.1971). First, the original conviction is set aside and the defendant is retried and resentenced for the same offense; credit should be allowed. *Id.* at 1020. Second, after a conviction and sentence is invalidated, the defendant commits a separate offense; the defendant cannot "bank time" or have a "line of credit for future crimes" and any time on the invalid sentence is not credited on the second offense.

{¶ 64} Third, the situation presented here, when the defendant is serving consecutive sentences and the first one is invalidated after being partially served, the State must credit the sentence remaining to be served on the valid conviction with the time served under the voided conviction. The court stated that "[c]ommon sense and fundamental fairness require that under such circumstances the state should not ignore the period of imprisonment under the invalid sentence when an appropriate remedy [i.e., to adjust the administrative records of the prison authorities so that service on the remaining valid sentences would commence at an earlier date] is so readily available." *Id.* at 1021. In such a situation, it has been held, failing to credit a defendant would "abuse due process, shock the judicial conscience and effect the imposition of cruel and unusual punishment under the eighth amendment." *Goodwin*, 418 F.2d at 868. *Accord Maroney,* 264 F.Supp. at 688.

{¶ 65} As an intermediate state appellate court, we necessarily follow state statutes and precedent, and I concur in judgment. I write separately to emphasize the closeness of the question and to urge review by a higher court.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Amy E. Ferguson
Hon. Gregory F. Singer